| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br>In re:                                                               :<br>                                                               :<br>NEW 118th, INC., <u>et al.</u>,                    :<br>                                                               :<br>                      Debtors.          :<br>------------------------------------------------------X | FOR PUBLICATION<br><br><br>Chapter 11 (Confirmed)<br>Case No. 07-12333<br>                                  : |

**MEMORANDUM DECISION REGARDING
THE § 1146(a) TAX EXEMPTION**

**A P P E A R A N C E S:**

VENABLE LLP
Attorneys for Richard L. Wasserman, Trustee
1270 Avenue of the Americas, 25th Floor
New York, NY 10020

       Edward Smith, Esq.
       Of Counsel

CORPORATION COUNSEL OF THE CITY OF NEW YORK
Attorney for the New York City Department of Finance
100 Church Street
New York, NY 10007

       Zachary B. Kass, Esq.
       Of Counsel

**STUART M. BERNSTEIN
Chief United States Bankruptcy Judge**

       Section 1146(a) of the Bankruptcy Code grants certain tax exemptions to transfers "under a plan confirmed under section 1129 of this title." The question presented in this contested matter is whether the exemption applies to a pre-confirmation sale that closes <u>after</u> confirmation and is necessary to the consummation of the plan. Answering the question in the affirmative, the Court overrules the objection filed by the New York City Department of Finance (the "City") to the chapter 11 trustee's plan.

**BACKGROUND**

The facts relevant to the narrow issue raised by the parties are not in dispute. On July 30, 2007, certain creditors filed involuntary chapter 11 petitions against New 118th LLC and 15 affiliates. The Court ordered relief, and approved the appointment of Richard L. Wasserman as chapter 11 trustee ("Trustee"). On August 17 and August 20, 2007, the petition creditors filed involuntary petitions against two additional, affiliated debtors. The Court appointed Mr. Wasserman to serve as the Chapter 11 trustee in the new cases, and subsequently ordered relief.

**A.    The Sale of the Debtors' Rental Properties**

The debtors owned 21 apartment buildings in Upper Manhattan in New York City (collectively, the "Rental Properties").[1] On April 14, 2008, the Trustee contracted to sell the Rental Properties to Washington Heights Multifamily Associates LLC ("Washington Heights") for $54,000,000, subject to higher and better offers. (Motion to Sell the Rental Properties, dated Apr. 22, 2008 ("Sale Motion"), Ex. B) (ECF Doc. # 375.) The contract provided that the sale was "expressly conditioned upon the entry of an order pursuant to Section 363 of the Bankruptcy Code, or pursuant to a confirmed Chapter 11 plan, by the Bankruptcy Court approving and authorizing this Contract, or approving and authorizing the Seller to execute, deliver and perform this Contract." (Id., Ex. B, at § 4(c).)

On April 22, 2008, the Trustee moved under § 363 of the Bankruptcy Code to approve the sale. The Trustee was unable to file a plan and disclosure statement prior to the sale "[b]ecause of the need to dispose of the properties as soon as possible and the

---

[1] Two debtors owned (and sold) other real property that was not part of the Rental Properties sale.

2

difficulties in assembling the necessary information and sorting out the business and financial affairs of the Debtors under the circumstances of this case." (Sale Motion, at ¶ 23.) The sale was nonetheless the linchpin of the liquidating plan that the Trustee intended to file as soon as practicable. He explained:

> The Chapter 11 Trustee intends to file a liquidating Chapter 11 plan or plans as soon as practicable. Although the sale of the Upper Manhattan Apartment Buildings may not be consummated before the confirmation of a plan, the proceeds to be generated by the sale will be used to fund, in part, the liquidating plan or plans to be filed by the Chapter 11 Trustee and confirmed in the Debtors' cases.

(Sale Motion, at ¶ 80.)

The Trustee contended that the sale was integral to the consummation of the anticipated plan. As a consequence, he maintained that the subsequent transfer of the Rental Properties should be exempt from stamp and similar taxes pursuant to 11 U.S.C. § 1146(a). (Id.) The City objected, arguing that the § 1146(a) exemption did not apply to pre-confirmation sales.

The Court conducted the sale hearing one June 17, 2008. No other bidders surfaced, and the Court approved the sale by the Trustee to Washington Heights. On June 19, 2008, the Court signed the Sale Order.[2] The Sale Order did not resolve the disagreement between the Trustee and the City, but the parties agreed to let the transaction go forward, and leave the question of the exemption for another day.[3] In the meantime, the Trustee agreed to pay or escrow the disputed taxes. (See Sale Order, at ¶

---

[2] The full title of the Sale Order is Order Approving Sale of 21 Apartment Buildings Owned By Certain Debtors and Located in the Harlem And Washington Heights Sections of New York Free and Clear of All Liens, Claims, Encumbrances and Other Interests to Washington Heights Multifamily Associates LLC and Granting Related Relief, dated June 19, 2008. (ECF Doc. # 437.)

[3] Any decision regarding the availability of the exemption was academic unless and until the Trustee confirmed a plan.

3

14.) The Sale Order did, however, include a "finding of fact" that the Trustee had properly exercised his business judgment in deciding to sell the Rental Properties "prior to and in contemplation of and as an integral part of a plan or plans of liquidation to be filed by the Chapter 11 Trustee." (Id., at ¶ F.)

**B.     The Trustee's Plan of Liquidation**

The Trustee filed a "Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code" on July 3, 2008, and an "Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code" (the "Amended Plan") on July 14, 2008. (ECF Doc. # 466.) The Amended Plan was a "pot" plan. In substance, it proposed to pay the administrative and priority claims in full on the effective date, unless a claimant agreed to different treatment, and distribute any balance to the unsecured creditors. (See generally id., at Art. II-IV.)

The Amended Plan reaffirmed the importance of the Rental Properties sale, which had still not closed. According to § 7.01, "[a]s an integral part of implementation of the Plan, the Trustee shall sell the Rental Properties pursuant to and under the Plan to Washington Heights Multifamily Associates LLC in accordance with the contract approved in the Court's Order entered June 19, 2008." Consequently, the "[s]ale of the Rental Properties pursuant to the Plan shall be exempt pursuant to section 1146(a) of the Bankruptcy Code from the imposition of any New York state or local deed recording taxes and other similar taxes." (Amended Plan § 7.01; accord § 13.02.)

The City filed a limited objection relating to the applicability of the § 1146(a) exemption, (Limited Objection of the New York City Department of Finance to

4

Confirmation of the Chapter 11 Trustee's Amended Joint Liquidating Plan, dated July 30, 2008 ("Objection"))(ECF Doc. # 491), and asserted that it was entitled to taxes in the amount of $1,633,502. (See Supplemental Declaration of Richard L. Wasserman, dated Sept. 26, 2008, ¶ 7)(ECF Doc. # 551.)  The City made several points: (a) Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 128 S. Ct. 2326 (2008), decided the day before the sale hearing and discussed below, established a bright-line test under which the exemption did not apply to a § 363 pre-confirmation sale, even if the sale closed post-confirmation, (Objection, at ¶ 18), (b) the Trustee could not convert a pre-confirmation sale into an exempt post-confirmation sale by filing a plan that incorporated the sale terms and postponed the closing, (id., at ¶ 20), and (c) the exemption only applied to "reorganization" plans, not liquidating plans. (Id., at ¶ 22.)

**C.     Confirmation of the Amended Plan and the Transfer of the Rental Properties**

The Court confirmed the Amended Plan on August 8, 2008, (see Order Confirming Chapter 11 Plan, dated Aug. 8, 2008)(ECF Doc. # 516), and reserved decision on the applicability of the tax exemption. (See id., at ¶ 36.)  The Amended Plan became effective on August 18, 2008. (Post Confirmation Status Report, dated Oct. 8, 2008, at ¶ 3)(ECF Doc. # 570.)

The closing of the Rental Properties sale began on September 4, 2008, and was completed on September 8, 2008. (Trustee's Report of Sale of the Upper Manhattan Apartment Buildings, dated Oct. 8, 2008, at ¶ 8)(ECF Doc. # 568.)  On the latter date, the Trustee received net proceeds in the amount of $52,511,249.00. (Id., at ¶ 9.)  The Trustee executed and delivered the deeds at the closing, and the purchaser recorded the deeds on September 23, 2008. (Id., at ¶ 8 n. 2.)  After the Trustee satisfied the secured claims and

5

paid the broker's fee, the remaining net sale proceeds totaled $4,506,357.48. (Id., at ¶¶ 10-12.)

## DISCUSSION

A trustee may sell property prior to confirmation, 11 U.S.C. § 363, or through a plan. See 11 U.S.C. § 1123(a)(5)(D), 1123(b)(4). Under New York law, where the Rental Properties are located, the transfer of real property, by sale or otherwise, does not occur until the deed is delivered and accepted. In re 234-6 West 22nd St. Corp., 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997); see N.Y. REAL PROP. § 244 (McKinney 2006)("A grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery; and all the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter executed."). The buyer must record the deed to protect its interest against the rights of a subsequent good faith purchaser for value. See N.Y. REAL PROP. § 291 (McKinney 2006); Reynolds v. Springer Serv. Station, Inc., 542 N.Y.S.2d 256, 257 (N.Y. App. Div. 1989)(Real Property Law § 291 "provides that any conveyance of real property which is not recorded in the office of the clerk of the county where that property is situated, shall be void as against a subsequent purchaser who acquires the property in good faith and for valuable consideration"). The buyer cannot record the deed, however, unless a recording tax is paid in an amount equal to $2 for every $500 of consideration or value. N.Y. TAX LAW §§ 1402(a), 1410(b) (McKinney 2008); see 995 Fifth Ave. Assocs., L.P. v. New York State Dep't of Taxation (In re 995 Fifth Ave. Assocs., L.P.), 963 F.2d 503, 511-12 (2d Cir.), cert. denied, 506 U.S. 947 (1992).

Section 1146(a) allows the deed to be recorded without the payment of the stamp or similar tax. It states:

6

> The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer <u>under a plan confirmed</u> under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.[4]

Emphasis added.

Courts have wrestled with the meaning of the phrase "under a plan confirmed." For example, in the leading Second Circuit case, <u>In re Jacoby-Bender, Inc.</u>, 758 F.2d 840 (2d Cir. 1984), the plan provided for funding through the sale of a building owned by the debtor. <u>In re Jacoby-Bender, Inc.</u>, 40 B.R. 10, 11 (Bankr. E.D.N.Y. 1984). Following confirmation, the debtor presented an order to approve the contract to sell the building, declare the sale exempt from the imposition of taxes, and direct the filing of the deed without the prepayment of the taxes. <u>Id.</u> at 12. New York City objected to the filing of the deed without payment of the City's Real Estate Transfer Tax, contending that the latter was not a "stamp or similar tax" within the meaning of § 1146(a). <u>See</u> <u>id.</u> 14-15. The bankruptcy court approved the sale, but directed the debtor to escrow the disputed taxes. <u>Id.</u> at 12. The bankruptcy court subsequently overruled the City's objection, <u>id.</u> at 15, the district court affirmed, and the City appealed. <u>See</u> <u>In re Jacoby-Bender, Inc.</u>, 758 F.2d at 841.

The Second Circuit Court of Appeals also affirmed. The City contended, <u>inter alia</u>, that the deed was not delivered "under a plan confirmed" because the plan did not mention any instrument of transfer and did not authorize the specific sale. <u>Id.</u> The Court

---

[4]    Former § 1146(c) was redesignated § 1146(a), without change, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Pre-BAPCPA cases, including those discussed in this opinion, refer to § 1146(c). To avoid confusion, this opinion will refer to § 1146(a), even when discussing pre-BAPCPA decisions.

7

rejected the argument that the plan had to contain specifics, and instead, took an expansive view of the exemption:

> [A]s the bankruptcy court found, "the plan's consummation depended almost entirely upon the sale of the building," the sale in turn depending upon the delivery of the deed. That the plan did not empower the debtor to make a specific sale or deliver a specific deed is irrelevant to our determination that the delivery of the deed took place "under" the plan within the meaning of section 1146(c) . . . . "[W]here, as here, a transfer, and hence an instrument of transfer, is necessary to the consummation of a plan, the plan seems implicitly to have 'dealt with' the transfer instrument."

Id. at 841-42.

In NVR Homes, Inc. v. Clerks of the Circuit Courts of Anne Arundel County (In re NVR, LP), 189 F.3d 442 (4th Cir. 1999), cert. denied, 528 U.S. 1117 (2000), the Fourth Circuit reached the opposite result on distinguishable facts, but endorsed Jacoby-Bender's reasoning. In contrast to the post-confirmation transfer in Jacoby-Bender, the debtor in NVR sold and consummated over 5,500 sales of real property prior to confirmation. 189 F.3d at 448. The plan that was subsequently confirmed exempted the pre-confirmation transfers under § 1146(a). Id.

The debtor thereafter sought a refund of the taxes that had been paid. The bankruptcy court ruled, and the district court agreed, that the exemption applied to the transfers that were completed pre-confirmation because the transfers were necessary to the confirmation of the debtor's plan and its emergence from bankruptcy. See id. at 455.

On appeal, the Fourth Circuit Court of Appeals reversed, attributing the lower courts' conclusions to a misreading of Jacoby-Bender. The Court stated that Jacoby-Bender focused on whether the transfer was necessary to the "consummation" of the plan,

8

not the confirmation of the plan. Yet some later decisions read the terms synonymously, and mistakenly extended Jacoby-Bender to pre-confirmation transfers that were necessary to the "confirmation" of the plan:

> The fundamental difference between the consummation of a plan and the confirmation of a plan is the timing of the events within the bankruptcy process. Consummation or execution of a reorganization plan cannot take place until the bankruptcy court first confirms a plan. . . . By changing and applying Jacoby-Bender 's holding to new and different circumstances, courts used this altered analysis not only to determine what transfers were "under a plan," but also what transfers were "under a plan confirmed." These decisions embraced the belief that if a transfer was "essential to the confirmation of the plan," then it was "under a plan confirmed." . . . We think it is error to twist the Second Circuit's language to the defeasance of § 1146(c)'s own terms."

Id. at 456. Turning to the meaning of "under a plan confirmed," the Court ruled:

> We must conclude that Congress, by its plain language, intended to provide exemptions only to those transfers reviewed and confirmed by the court. Congress struck a most reasonable balance. If a debtor is able to develop a Chapter 11 reorganization and obtain confirmation, then the debtor is to be afforded relief from certain taxation to facilitate the implementation of the reorganization plan. Before a debtor reaches this point, however, the state and local tax systems may not be subjected to federal interference."

Id. at 458.

NVR adopted a bright-line test under which the transfer had to occur post-confirmation. If it did, then the NVR court essentially agreed with the Second Circuit's analysis, affording the debtor the exemption to facilitate the implementation of the plan.

The Third Circuit Court of Appeals adopted a more restrictive view in In re Hechinger Inv. Co. of Del., 335 F.3d 243 (3d Cir. 2003). There, the debtor moved pursuant to § 363 to sell property prior to confirmation, and sought a declaration that the resulting transfers were exempt under § 1146(a). Id. at 246. The local taxing authorities

9

objected on several grounds, including that § 1146(a) did not apply to pre-confirmation sales.  Id. at 247.  The bankruptcy court overruled the objections, holding that the sales were "under a plan confirmed" because the transfer was essential to or an important component of the plan process.  Id.  The district court affirmed.  Id. at 248.

On appeal, the Third Circuit reversed.  The Court concluded that "the most natural reading of the phrase 'under a plan confirmed' . . . is 'authorized' by such a plan."  Id. at 252.  Thus, "if an instrument of transfer is made or delivered 'under' a plan, the plan must provide the authority for the transaction."  Id.  Even if the phrase was deemed ambiguous, two canons of construction supported this interpretation.  First, tax exemption provisions must be strictly construed.  Id. at 254.  Second, federal laws that interfere with a state's taxation scheme must also be narrowly construed in favor of the state.  Id.

The Hechinger Court then turned its attention to Jacoby-Bender; its reading differed from NVR's.  According to the Third Circuit, the Jacoby-Bender decision "resolved the issue of whether the sale was authorized by the terms of the previously confirmed plan, not whether the sale was necessary to achieving the plan confirmation."  Id. at 255.  In other words, "[t]he Second Circuit's statement that the debtor's sale of real property was 'necessary to the consummation of the plan' simply meant that the language of the plan, or the implications thereof, required the sale to occur."  Id.  Thus, while NVR read § 1146(a) as imposing the dual requirements of timing (post-confirmation transfers) and necessity (consummation of the plan), Hechinger demanded more.  Under Hechinger, the plan also had to provide the "legal authority" for the transfer, and the "legality" of the transfer had to depend on the confirmation of the plan.  Id. at 252.

10

In In re Piccadilly Cafeterias, Inc., 484 F.3d 1299 (11th Cir. 2007), the Eleventh Circuit Court of Appeals rejected the approaches in NVR and Hechinger, and held that the exemption applied to the typical fact pattern -- a pre-confirmation § 363 sale consummated through a pre-confirmation transfer. Relying on Jacoby-Bender and an earlier Eleventh Circuit case, In re T. H. Orlando Ltd., 391 F.3d 1287 (11th Cir. 2004), the Court rejected the "timing" requirement under § 1146(a), and focused exclusively on the "necessity" of the transfer:

> [T]he better reading of "under a plan confirmed" looks not to the timing of the transfers, but to the necessity of the transfers to the consummation of a confirmed plan of reorganization.

Piccadilly, 484 F.3d at 1303-04. Following the decision, the Supreme Court granted certiorari to resolve the conflict among the circuits. Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 128 S. Ct. 2326, 2331 (2008).

The Supreme Court reversed the Eleventh Circuit, and adopted the temporal test imposed by the NVR. A transfer cannot be "under a plan confirmed" until the court confirms a plan, and "[i]f the statutory context suggests anything, it is that § 1146(a) is inapplicable to preconfirmation transfers." 128 S. Ct. at 2336. The Supreme Court did not, however, adopt Hechinger's interpretation that "under a plan confirmed" necessarily meant authorized by the plan. Instead, it quoted NVR's summation as the appropriate rule:

> [W]e see no absurdity in reading § 1146(a) as setting forth a simple, bright-line rule instead of the complex, after-the-fact inquiry Piccadilly envisions. At bottom, we agree with the Fourth Circuit's summation of § 1146(a):
>
> > "Congress struck a most reasonable balance. If a debtor is able to develop a Chapter 11 reorganization and obtain confirmation, then the debtor is to be afforded relief from certain taxation to facilitate

11

> the implementation of the reorganization plan. Before a debtor reaches this point, however, the state and local tax systems may not be subjected to federal interference."

128 S. Ct. at 2339 (quoting NVR, 189 F.3d at 458).

Piccadilly did not address whether the exemption could apply to a pre-confirmation sale that closed post-confirmation. Nevertheless, the post-confirmation delivery of the deed, and hence, the transfer, satisfies Piccadilly's "simple, bright-line rule." Furthermore, the Supreme Court's adoption of the NVR standard, and by extension, the reasoning of Jacoby-Bender, suggests that the § 1146(a) exemption applies to a post-confirmation transfer that follows a pre-confirmation sale if the transfer facilitates the implementation of the plan, or in the words of Jacoby-Bender, is necessary to the consummation of the plan.

Under this standard, the transfers of the Rental Properties qualify for the exemption. Although the § 363 sale occurred pre-confirmation, the deeds were delivered and the transfers occurred post-confirmation. Having procured confirmation, the Trustee is "to be afforded relief from certain taxation to facilitate the implementation of the reorganization plan."

Furthermore, the transfers of the Rental Properties did not merely facilitate the implementation of the Amended Plan; they were essential to its consummation. The City does not take issue with this conclusion. As of August 17, 2008, the Amended Plan's effective date, the estates had approximately $980,000 in cash, (see Operating Report for the Period August 1, 2008 to August 17, 2008, dated Aug. 25, 2008, ("Statement of Available Cash"))(ECF Doc. # 533), plus an additional $2,725,379 representing the

12

proceeds of the sale of two other properties that were not part of the Rental Properties sale.  (See id. (Schedule of Sale Proceeds Cash Receipts and Disbursements).)

The majority of these sales proceeds -- $2,155,531 – were derived from the sale of the property owned by the debtor 72 Kings Ave. Corp.  (Id.)  Dominion Financial Corporation asserted a lien in the proceeds in the approximate sum of $2 million as of the effective date.  (See Limited Objection to Proposed Sale, dated Feb. 6, 2008, Ex. B ("Payoff Letter"))(ECF Doc. # 263).[5]  Dominion and the Trustee eventually settled the lien claim for $ 1 million.  (Consent Order Resolving Claims of Dominion Financial Corporation With Respect To 72 Kings Ave. Corp. and the Kings Avenue Property, dated Dec. 18, 2008)(ECF Doc. # 606.)  Backing out the settlement, the debtors held approximately $2 million in unencumbered funds as of the effective date.

This amount was insufficient to implement the Amended Plan.  The allowed professional fees and reimbursed expenses alone totaled $7,376,083.68.  (Consent Order Granting Final Compensation and Reimbursement of Expenses To Professionals, Resolving Objections and Approving Carve Outs For Unsecured Creditors, dated Nov. 20, 2008, at Schedule A ("Fee Order")) ECF Doc. # 598.)  These awards were administrative claims, 11 U.S.C. §§ 503(b)(2), 507(a)(2), that had to be paid on the effective date unless the claimant consented to different treatment.  11 U.S.C. § 1129(a)(9)(A).  Even with the $4.5 million in sale proceeds from the Rental Properties, the Trustee lacked the funds to satisfy all of the requested fees and expenses.  He was

---

[5]   According to the Payoff Letter, the 72 Kings Ave. Corp. would owe $1,881,064.33 as of March 15, 2008, and additional interest would accrue at the daily rate of $1,084.93.  An additional $168,164.15 of interest accrued between March 15, 2008 and August 17, 2008.

13

able to consummate the Amended Plan only because some of the fee claimants agreed to take less now, and look to future litigation recoveries for the balance of their awards. (See Fee Order, at ¶¶ 6, 7, 8, 11, 12 and 15.)  The Trustee could not have accomplished even this result without the available proceeds from the sale of the Rental Properties.

Accordingly, although the sale of the Rental Properties occurred before confirmation, the delivery of the deeds took place after confirmation, and was necessary to the consummation of the plan.  The transfers were, therefore, made "under a plan confirmed," and are exempt from the payment of stamp or similar taxes under § 1146(a). The City's objection is overruled, and the City is directed to refund any such taxes paid under the interim agreement reached by the parties.

This conclusion necessarily rejects the City's argument that § 1146(a) can never apply to a pre-confirmation sale under § 363.  Piccadilly did not adopt such a rule and nothing in § 1146(a) requires the "sale" to occur post-confirmation.  In fact, the word "sale" does not appear in § 1146(a).  Instead, § 1146(a) is concerned with the "transfer" or the "making or delivery of an instrument of transfer."

Finally, the City's argument that § 1146(a) applies to reorganization plans but not liquidation plans lacks merit.  The argument confuses "reorganization," which includes "liquidation," with the separate and distinct concept of "rehabilitation":

> The Bankruptcy Code distinguishes between "reorganization" and "rehabilitation."  The ability to "reorganize" refers to the technical requirement of the ability to confirm a plan, 7 Lawrence P. King, Collier on Bankruptcy ¶ 1112.04[5][a][ii], at 1112-32 (Rev. 15th ed.1998), and includes the ability to confirm a liquidating plan. In re Economy Cab & Tool Co., 44 B.R. 721, 725 n. 2 (Bankr. D. Minn.1984).  "Rehabilitation," on the other hand, connotes an ability to continue as a viable business. See id. (internal quotation marks omitted).

14

<u>In re Hagerstown Fiber Ltd. P'ship</u>, No. 98-41988(SMB), 1998 WL 538607, at *10 n. 16 (Bankr. S.D.N.Y. Aug. 24, 1998).  A debtor may confirm a liquidating plan that provides for the sale of all or substantially all of its assets and the distribution of the sales proceeds to the creditors.  11 U.S.C. § 1123(b)(4).  This is the option that the Trustee followed.  It is permissible under chapter 11, and is, therefore, a permissible form of reorganization.

The Court has considered the City's remaining arguments, and concludes that they lack merit.  Settle order on notice.

Dated: New York, New York
       January 9, 2009

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge